## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ALBERT JASON CARTER,

      Petitioner,

v.                                             Case No. 3:18-cv-888-TJC-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

I.   **Status**

      Petitioner, Albert Jason Carter, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. Petitioner challenges four state court (Duval County, Florida) judgments rendered in: State v. Carter, 2009-CF-15483; 2009-CF-15529; 2009-CF-16025; and 2010-CF-1910. Id. at 1. Petitioner is serving a cumulative twenty-year term of incarceration. Respondents filed a Response raising one argument – that the Petition is due to be dismissed with prejudice because it is untimely filed. See generally Doc. 8

(Resp.).[1] Petitioner replied asserting that the Petition is timely filed. <u>See</u> Doc. 10. This case is ripe for review.

## II.   <u>One-Year Limitations Period</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding a one-year period of limitation, which generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d). The section further provides, "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." <u>Id.</u>

On January 27, 2010, Petitioner entered an open plea of guilty to possession of a controlled substance (2009-CF-15483), grand theft (2009-CF-15529), and burglary (2009-CF-16025). Resp. Exs. A3, B3, C3. On March 30, 2010, Petitioner entered an open plea of guilty to burglary and grand theft (2010-CF-1910). Resp. Exs. D3-D4. And on May 16, 2011, he entered an open plea of guilty to perjury in an official proceeding (2009-CF-16025). Resp. Exs. C5-C6. On May 20, 2011, the trial court sentenced Petitioner to a five-year term of incarceration in 2009-CF-15483; a five-year term in 2009-CF-15529; a fifteen-

---

[1] Attached to the Response are several exhibits. The Court cites the exhibits as "Resp. Ex."

year term for the burglary conviction and a consecutive five-year term for the

perjury conviction in 2009-CF-16025; and a fifteen-year term for the burglary

conviction and a five-year term for the grand theft conviction in 2010-CF-1910.

Resp. Exs. A4, B4, C6, D4. Petitioner did not seek a direct appeal of any

judgment of conviction, and thus his judgments and sentences became final

upon the expiration of the time to file a notice of appeal, Monday, June 20,

2011.[2] See Fla. R. App. P. 9.140(b)(3). Petitioner's one-year statute of limitations

for each state court judgment started the next day, June 21, 2011.

Following the June 21, 2011, one-year start date, the procedural history

of each case gets complicated, and for the sake of brevity, the Court merely

summarizes the relevant filings in each state court docket.[3] On day forty-one of

---

[2] The thirtieth day fell on a Sunday, June 19, 2011, so Petitioner had until the following Monday, June 20, 2011, to file a notice of appeal.

[3] The captions of Petitioner's pro se state postconviction motions appear to list all four of his state court cases; however, not every motion appears on each state court docket. Also, the captions of the trial court's orders disposing of each postconviction motion appear to list all four of Petitioner's state court cases, and every order appears on each state court docket regardless of a particular motion's presence on that docket. These discrepancies raise questions about whether those motions not appearing on all dockets were "properly filed" for tolling purposes. Nevertheless, because the parties do not make such arguments, the Court need not decide that issue; and for purposes of this Order, the Court takes judicial notice of Petitioner's state court dockets when discussing timeliness. See Fed. R. Evid. 201(b)(2) (a court may "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned"); Paez v. Sec'y, Fla. Dep't of Corr., 947 F.3d 649 (11th Cir. 2020) ("State court records of an inmate's postconviction proceedings generally satisfy" the standard for judicial notice.).

Petitioner's one-year in 2009-CF-15529, 2009-CF-15483, and 2009-CF-16025, Petitioner's statute of limitations was tolled on August 1, 2011, when Petitioner filed a pro se Florida Rule of Criminal Procedure 3.850 motion.[4] See Carter, 2009-CF-15529, 2009-CF-15483, 2009-CF-16025. The trial court granted Petitioner's motion to dismiss his August 1, 2011, Rule 3.850 motion without prejudice on March 12, 2012. Resp. Ex. G1 at 16-17. Thus, in 2009-CF-15529, 2009-CF-15483, 2009-CF-16025, Petitioner's one-year resumed the next day, March 13, 2012.

According to each state court docket, on day 106 of his one-year in 2009-CF-15529 and 2009-CF-16025, Petitioner's limitations period was tolled on May 17, 2012, when Petitioner filed another Rule 3.850 motion in those cases.[5] See Carter, 2009-CF-15529, 2009-CF-16025. Having not been tolled by the May 17, 2012, Rule 3.850 motion, the limitations period in 2009-CF-15483 was then tolled on day 133 when Petitioner filed another Rule 3.850 motion on June 13, 2012. See Carter, 2009-CF-15483. Petitioner also filed the June 13, 2012, motion in 2010-CF-1910, which having been the first postconviction motion appearing on the state court docket in that case, was day 358 of the case's one-year. See Carter, 2010-CF-1910.

---

[4] Petitioner's August 1, 2011, Rule 3.850 motion does not appear on the state court docket for 2010-CF-1910.

[5] Neither party mentions this May 17, 2012, motion in their briefs, and this motion does not appear on the state court dockets for 2009-CF-15483 or 2010-CF-1910.

Then, in each of the four cases, on May 17, 2013, Petitioner filed a generic motion to dismiss all prior Rule 3.850 motions and simultaneously filed an amended Rule 3.850 motion. Resp. Ex. G1 at 30-35. In the same order, the trial court granted Petitioner's motion to dismiss and summarily denied the May 17, 2013, amended Rule 3.850 motion. Resp. Ex. I. Petitioner appealed, and the First District Court of Appeal issued its mandate affirming the trial court's summary denial on November 30, 2015. Resp. Ex. J. Petitioner's one-year resumed in all cases the next day, December 1, 2015. Seven days later, on December 8, 2015, Petitioner's one-year expired in 2010-CF-1910.

On day 297 in 2009-CF-15529 and 2009-CF-16025, and day 324 in 2009-CF-15483, Petitioner tolled his one-year by filing a Florida Rule of Criminal Procedure 3.800(a) motion on June 9, 2016. Resp. Ex. L. While his Rule 3.800(a) proceedings were pending, Petitioner, with the trial court's permission, filed his second amended Rule 3.850 motion in each case. Resp. Ex. G1 at 55-83. Petitioner's Rule 3.800(a) proceedings concluded through the First DCA's November 9, 2017, mandate, Resp. Ex. M; and his second amended Rule 3.850 proceedings concluded through the First DCA's June 4, 2018, mandate, Resp. Ex. H. Petitioner's one-year in 2009-CF-15529, 2009-CF-15483, and 2009-CF-16025 resumed the next day, June 5, 2018. On July 17, 2018, day 366, one day after the expiration of his one-year in 2009-CF-15483, and day 339 of his one-

5

year in 2009-CF-15529 and 2009-CF-16025, Petitioner initiated this action. <u>See</u> Doc. 1.

Respondents make a blanket argument that Petitioner initiated this action one day after the expiration of his federal statute of limitations. <u>See generally</u> Resp. In support of that assertion, Respondents appear to only outline the docket history for 2009-CF-15483. But contrary to Respondents' summary, a thorough review of Petitioner's state court dockets shows the procedural history of Petitioner's collateral filings in each case cannot be considered in concert. In his Reply, Petitioner also seems to overlook the differences in his collateral filings for each case, and simply argues the Petition is timely filed because he is entitled to the additional ninety-day period for filing a petition for writ of certiorari with the United States Supreme Court following the expiration of time to seek a direct appeal with the First DCA. <u>See</u> Doc. 10 at 3. However, because Petitioner failed to seek a direct appeal in any case, he is not entitled to that ninety-day period. <u>See</u> <u>Close v. United States</u>, 336 F.3d 1283, 1285 (11th Cir. 2003) ("According to rules of the Supreme Court, a petition for certiorari must be filed within 90 days of the <u>appellate court's entry of judgment on the appeal</u> or, if a motion for rehearing is timely filed, within 90 days of the appellate court's denial of that motion." (emphasis added)).

That said, despite the parties' miscalculation and Respondents' decision to limit their Response to a timeliness argument, the Court, in its discretion,

finds the administration of justice is better served by reaching the merits of the Petition. See Day v. McDonough, 547 U.S. 198, 199 (2006) (noting that a statute of limitations defense is not jurisdictional and holding "a district court has discretion to decide whether the administration of justice is better served by dismissing the case on statute of limitations grounds or by reaching the merits of the petition"). While the Court could have ordered Respondents to file a supplemental response on the merits, there is "no dispositive difference between that route, and the one taken here." Id. at 209; see also Fontenot v. Crow, 4 F.4th 982, 1058 (10th Cir. 2021) (holding that despite the state's procedural motion to dismiss, Rules 4 and 5 of the Rules Governing Section 2254 Cases indicate that a district court is entitled to rule on the merits of a petition after giving the state an open-ended chance for response). Further, Petitioner fully exhausted his claims in state court, and he analyzes the deferential standard set forth in AEDPA when presenting his claims in the Petition; therefore, Petitioner will not be prejudiced by the Court's deferential review. See Doc. 1. As such, the Court addresses the claims raised in the Petition. See, e.g., Scott v. Sec'y, Dep't of Corr., 8:15-cv-1290-T-36MAP, 2018 WL 1519046, at *4 n.1 (M.D. Fla. Mar. 28, 2018) (addressing § 2254 habeas petition on the merits because the respondents agreed the petition was untimely with respect to the conviction on one of the petitioner's state court cases but was timely with respect to the petitioner's conviction in a second state court case).

III.   <u>**Governing Legal Principles**</u>

A. **Standard Under AEDPA**

AEDPA governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

8

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." <u>Id.</u> § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> [at 102] (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. <u>See, e.g.</u>, <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18 (2003); <u>Lockyer</u>, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000) ("[A]n unreasonable

> application of federal law is different from an incorrect
> application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

The two-part Strickland test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must still demonstrate that counsel's performance was deficient. See id. at 56-59; Lynch v. Sec'y Fla. Dept. of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must

show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (footnote omitted); Lynch, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's

representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## IV.   **The Petition**

Petitioner raises five Grounds premised on allegations of ineffective assistance of counsel, in which Petitioner challenges the voluntariness of his pleas and the factual basis supporting his pleas. See generally Doc. 1. To begin, the Court notes that Petitioner's pleas waive many federal constitutional rights, including the right to a jury trial, the right to a speedy trial, and the right to require the state to prove the crime beyond a reasonable doubt. Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); Tiemens v. United States, 724 F.2d 928, 929 (11th Cir. 1984) ("[A] guilty plea waives all nonjurisdictional defects occurring prior to the time of the plea,

including violations of the defendant's rights to a speedy trial and due process.").

Further, Petitioner's solemn declarations during his plea colloquies carry a strong presumption of truth. Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) (stating that a defendant who makes statements under oath at a plea colloquy bears a heavy burden to show his statements were false). Thus, Petitioner's representations at the plea hearings "constitute a formidable barrier in any subsequent collateral proceedings." Id. at 73-74; see also Stano v. Dugger, 921 F.2d 1125, 1152 (11th Cir. 1991) (recognizing that the record of the plea proceedings may contradict any subsequent claim that counsel's representation was deficient). Considering the difficult barrier Petitioner must overcome, the Court considers each of Petitioner's Grounds in turn below. In doing so, the Court finds that Petitioner's "subsequent presentation of conclusory allegations unsupported by specifics [are] subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Allison, 431 U.S. at 74.

## A. Ground One

Petitioner argues that his trial counsel was ineffective for advising him to enter an open plea of guilty to burglary in 2009-CF-16025. Doc. 1 at 4. According to Petitioner, before his plea, he advised counsel that he did not enter the store, nor was he on the property during the burglary, but was instead

merely sitting in his vehicle serving as a "lookout" for others who were committing the crime. <u>Id.</u> But despite his lack of participation, he alleges that his trial counsel advised him to enter the open plea even though his actions did not meet the elements of burglary. <u>Id.</u> at 4-5.

Petitioner raised this claim in his second amended Rule 3.850 motion. Resp. Ex. G1 at 56-60. The trial court summarily denied the claim, finding the following:

> Defendant argues he informed counsel there was no evidence indicating Defendant had entered the structure or property of Pantry, Inc. nor was there evidence showing Defendant had damaged the structure or property as alleged in the information. However, counsel told him that it was in his best interest to enter a plea, because there was no available defense. Defendant further argues counsel should have objected when the Court found a factual basis for the plea, because there was no evidence, testimony, proffer of evidence, statements, or reference to the record to sufficiently satisfy the dictates of Florida Rule of Criminal Procedure 3.172(a).

> The record reflects in case 2009-CF-16025, Defendant admitted to police he participated in the burglary by being a look-out while a co-defendant actually burglarized the store. While Defendant may not have actually entered the store, his participation in aiding his co-defendant that did enter the store sufficiently establishes the elements of burglary for Defendant pursuant to the principal theory. <u>See</u> § 777.011, Fla. Stat. ("Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be

committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense."). Accordingly, as a principal, Defendant's proposed defense would not have been viable.

During the plea colloquies on January 27, 2010 and March 30, 2010, Defendant acknowledged he was waiving his right to trial by jury and all of its attached rights. Defendant also testified that no one threatened or coerced him into entering the plea and that he was satisfied with his attorney. Notably, Defendant also admitted he was guilty of the charged crimes. The Court also notes Defendant could have received a maximum sentence of thirty years in prison on the burglary charges, but only received fifteen years in prison on those charges. Accordingly, based on the lack of [] viability of Defendant's proposed defense, his statements to the Court, and the reduced sentence he received, the Court finds there is no reasonable probability Defendant would have rejected this plea. Grosvenor, 874 So. 2d at 1181-82.

Concerning the factual basis, "[b]efore accepting a plea of guilty or nolo contendere, the trial judge shall determine that the plea is voluntarily entered and that a factual basis for the plea exists." Fla. R. Crim. P. 3.172(a). A court may satisfy the requirements of rule 3.172(a) by, among other things, receiving the statements and admissions made by a defendant, his or counsel, or the prosecutor. Williams v. State, 316 So. 2d 267, 273 (Fla. 1975). Notably, failing to determine a factual basis for the plea does not render the plea void unless prejudice can be shown. Fla. R. Crim. P. 3.172(j).

The record reflects the State gave a factual statement in support of the burglary charges. Therefore, a proper factual basis was proffered in support of the plea. Williams, 316 So. 2d at 273. Accordingly, counsel cannot be deemed ineffective for

> failing to raise a meritless argument. <u>Hitchcock v. State</u>, 991 So. 2d 337, 361 (Fla. 2008). For the above stated reasons, Defendant is not entitled to relief on Ground One.

Resp. Ex. G1 at 87-89 (record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the summary denial without a written opinion. Resp. Ex. H. The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications.

Petitioner is challenging his conviction in 2009-CF-16025 for burglary in the first degree. Section 810.02(2)(c)2, Florida Statutes, provides that a person may be guilty of burglary "if, in the course of committing the offense, the offender . . . [e]nters an occupied or unoccupied dwelling or structure, and . . . [c]auses damage to the dwelling or structure, or property within the dwelling . . . in excess of $1,000."[6] Under Florida law, "[a] defendant is guilty as a principal if he 'aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed.'" <u>Wade v. State</u>, 156 So. 3d 1004, 1017 (Fla. 2014) (quoting § 777.011, Fla. Stat.). Further, "it is immaterial whether the indictment or information alleges that the defendant committed the crime or was merely aiding or abetting in its

---

[6] In 2009-CF-16025, Petitioner also pled guilty to perjury stemming from a false statement Petitioner made under oath in an official proceeding on January 7, 2011. Resp. Ex. C4. Petitioner does not challenge that conviction in this action.

16

commission, so long as the proof establishes that he was guilty of one of the acts denounced by the statute." State v. Roby, 246 So. 2d 566 (Fla. 1971).

A review of the arrest and booking report for the 2009-CF-16025 burglary shows that on October 5, 2009, police responded to "an active audible alarm" at a convenience store located at 6003 Roosevelt Boulevard. Resp. Ex. C1 at 2. Upon arrival, police observed that the front door of the store had been forced open and the A.T.M. machine had been removed from the store. Id. The video surveillance showed multiple individuals breaking into the store and taking the A.T.M. while another individual waited outside and then subsequently helped load the A.T.M. into a vehicle before fleeing. Id. According to the report, this incident was the third burglary fitting the modus operandi of a particular organization of individuals. Id.

Police later arrested Petitioner on an unrelated incident. Id. After acknowledging his constitutional rights, Petitioner advised police that on October 5, 2009, he agreed to drive up and down Roosevelt Boulevard as a lookout while "Brian' hit the store with his brother" and was tasked with notifying Brian if police were in the area. Id. Petitioner stated that they used a stolen vehicle to conduct the burglary and he helped dump the vehicle afterwards. Id. The state then charged Petitioner with burglary under § 810.02(2)(c)2. Resp. Ex. C2. Petitioner entered a plea of guilty to the charge, and in doing so advised the trial court that he was entering his plea because he

was, in fact, guilty of the burglary. Resp. Ex. E at 7. In entering his plea, Petitioner acknowledged, under oath, that he was waiving his right to require the state to prove his guilt beyond a reasonable doubt. Id. at 6. He stated that his attorney went over the plea form with him, answered all his questions to his satisfaction, and that he was satisfied with her representation. Id. at 7. The trial court then accepted a factual basis for the plea and found that Petitioner freely and voluntarily entered his plea. Id. at 8-9.

The record evidence and Petitioner's plea colloquy refute Petitioner's claim that he did not participate in the burglary and likewise refute his allegations that his trial counsel was deficient in advising him to enter a guilty plea. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts considering the evidence presented to the state court. See 28 U.S.C. § 2254(d). This Ground is denied.

**B. Ground Two**

Petitioner asserts that his trial counsel was ineffective because she failed to advise Petitioner of the elements of the charged burglaries in 2009-CF-16025 and 2010-CF-1910; failed to advise him of the available defenses to these charges; and failed to investigate "mitigating evidence." Doc. 1 at 7. As alleged in Ground One, Petitioner maintains that he was merely the "lookout" for the

burglary in 2009-CF-16025. Id. And as to case 2010-CF-1910, Petitioner contends he simply drove "a 'front end loader' into the side of the building in order to create a hole in the structure," so another individual could enter, and that Petitioner never entered the structure. Id. Petitioner argues that he advised counsel about his limited participation, and had counsel advised him that he did not meet the elements of the burglary offenses, he would have proceeded to trial. Id.

Petitioner raised this claim in his second amended Rule 3.850 motion. Resp. Ex. G1 at 7-8. The trial court summarily denied the claim as follows:

> Defendant contends counsel failed to inform him about the elements of burglary. Specifically, he states his counsel never told him Defendant would have to actually enter the structure with the intent to commit an offense therein. According to Defendant, he had available defenses to the burglary charges because he never went into the structure and had no specific intent to commit an offense in the structure. Had counsel properly informed him of the elements and these defenses to the charge, Defendant claims he would have proceeded to trial instead of entering the plea.
>
> As noted above in the Court's analysis of Ground One, Defendant admitted to being an accessory to his co-defendant's crime in case 2009-CF-16025. Likewise, in case 2010-CF-01910, Defendant admitted to actively participating in the burglary. Therefore, pursuant to the principal theory, his co-defendant's actions of entering the structure with the intent of taking property are imputed on to Defendant. Defendant's theorized defense in Ground Two would therefore not have been viable. The non-viability of the defense, coupled with Defendant's statement to the Court

> during the colloquy, including admitting his guilt, and
> the sentence he received in comparison to the
> maximum sentence possible, demonstrate there is no
> reasonable probability Defendant would have foregone
> the plea to proceed to trial. <u>Grosvenor</u>, 874 So. 2d at
> 1181-82. Accordingly, Defendant has failed to
> demonstrate deficient performance or prejudice and is
> therefore not entitled to relief on Ground Two.

Resp. Ex. G1 at 89 (record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the summary denial without a written opinion. Resp. Ex. H. The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications.

In Ground One above, the Court discusses the evidence and factual basis supporting Petitioner's plea and conviction for burglary in 2009-CF-16025, and it relies on that discussion here. As to 2010-CF-1910, Petitioner is challenging another conviction for burglary in the first degree. Resp. Exs. D2-D3. According to the arrest and booking report for that case, in December 2008, police were called to the scene of a burglary at Premier Pharmacy where they observed severe damage to the structure. Resp. Ex. D1. Police watched the surveillance video, which showed two hooded and gloved suspects. <u>Id.</u> One of the suspects drove a front-end loader into the side of the structure, creating a large hole, while the second suspect crawled into the hole to enter the structure. <u>Id.</u> The front-end loader was left at the scene and when police conducted a walkthrough of the surrounding area, they found clothing believed to have been used by one

20

of the suspects. Id. Police submitted the clothing for DNA testing and received a "DNA hit." Id.

In February 2010, while Petitioner was in custody on other charges, police questioned Petitioner about the December 2008 burglary. Id. He first denied involvement, but when police confronted him with the DNA evidence, Petitioner admitted to stealing the front-end loader and driving it through the pharmacy while his accomplice went inside and stole drugs. Id. The state then charged Petitioner with burglary, and he entered an open plea of guilty to the charge.[7] Resp. Ex. F. In entering his plea, Petitioner acknowledged, under oath, that he was waiving his right to require the state to prove his guilt beyond a reasonable doubt. Id. at 5. Petitioner also advised the trial court that he was entering his plea because he was, in fact, guilty of the charged offense. Id. at 6. He stated that his attorney went over the plea form with him, answered all his questions to his satisfaction, and that he was satisfied with her representation. Id. at 7. The trial court then accepted a factual basis for the plea and found that Petitioner freely and voluntarily entered his plea with full understanding of its nature and consequences. Id. at 8.

The record and Petitioner's plea colloquy refute Petitioner's claims that his trial attorney failed to advise him of the facts supporting the burglaries or

---

[7] The state also charged Petitioner with grand theft for the taking of the front-end loader and Petitioner pled guilty to that charge as well.

that his alleged minimal participation would have been a valid defense. Thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). This Ground is denied.

### C. Ground Three

Petitioner contends that his trial counsel was ineffective for advising him to enter an open plea of guilty to grand theft in case 2009-CF-15529. Doc. 1 at 10. According to Petitioner, before his plea, he advised counsel that "he did not have anything to do with the actual taking of the pills that had been stolen, and did not know who was responsible for the theft." Id. He alleges that he was never a suspect in the theft and the only evidence that linked him to the pills was that police found the pills in the bedroom Petitioner shared with his live-in girlfriend. Id. at 10-11.

In ground three and ground six of his second amended Rule 3.850 motion, Petitioner challenged the sufficiency of his grand theft conviction in 2009-CF-15529. Resp. Ex. G1 at 63-67, 75-77. The trial court summarily denied the claims, explaining as follows:

> Defendant asserts counsel coerced him into pleading guilty to the offenses of possession of clonazepam and theft, while counsel also failed to object

22

to an insufficient factual basis for these crimes. According to Defendant, there was no evidence to support any element of this offense, but counsel advised Defendant it was in his best interest to plea because there was no defense. He further argues counsel should have objected because the factual basis presented did not satisfy the dictates of Florida Rule of Criminal Procedure 3.172(a).

The record reflects the grand theft charge in case 2009-CF-15529 alleged Defendant stole clonazepam from a truck deliver[ing] medications to a pharmacy. Police later raided Defendant's home and found him to be in possession of the same drugs stolen from the pharmacy, which form the basis of his possession of a controlled substance charge in case 2009-CF-15483. Accordingly, the arrest and booking reports for each of these cases, indicate Defendant had stolen goods in his possession. While he told police he bought them off the street from some other man, he was unable to provide a name or even the race of this other man.

The Court notes "[p]roof of possession by an accused of property recently stolen by means of a burglary, unless satisfactorily explained, may justify a conviction of burglary if the circumstances of the burglary and of the possession of the stolen property convince [a jury] beyond a reasonable doubt that the defendant committed the burglary." Fla. Std. Jury Instr. (Crim.) 13.1. As stated above, Defendant was in possession of the exact pills stolen from the pharmacy and he could not satisfactorily explain his possession of the pills to police at the time of his arrest. The Court finds Defendant's defense would not have been viable based on these facts. The non-viability of the defense, coupled with Defendant's statement to the Court during the colloquy, including admitting his guilt, and the sentence he received in comparison to the maximum sentence possible, demonstrate there is no reasonable probability Defendant would have foregone

the plea to proceed to trial. <u>Grosvenor</u>, 874 So. 2d at 1181-82.

The record reflects the State gave a factual statement in support of these charges. Therefore, a proper factual basis was proffered in support of the plea. <u>Williams</u>, 316 So. 2d at 273. Accordingly, counsel cannot be deemed ineffective for failing to raise a meritless argument. <u>Hitchcock</u>, 991 So. 2d at 361 (Fla. 2008). For the above stated reasons, Defendant is not entitled to relief on Ground Three.

. . . .

Defendant contends counsel coerced him into pleading guilty to the offenses of possession and theft of clonazepam. According to Defendant, there was no evidence to support any element of this offense, but counsel advised Defendant it was in his best interest to plea because there was no defense. Defendant further contends counsel failed to inform him that a lack of intent was an available defense.

To the extent Defendant realleges allegations previously raised in Ground Three, the Court hereby denies those arguments based on its analysis of Ground Three above. Regarding Defendant's argument counsel failed to inform him specific intent was an element of grand theft, Defendant admitted his guilt as to both the grand theft charge and the possession charge. Therefore, as the basis of this claim is that Defendant lied under oath, he is not entitled to relief on this claim. <u>Polk</u>, 56 So. 3d at 808; <u>see also</u> <u>Rivero v. State</u>, 121 So. 3d 1175, 1178 (Fla. 3d DCA 2013) (holding "[b]ecause the defendant in the instant case clearly stated under oath during his plea colloquy that he was satisfied with the services of his attorney, he was not being pressured or coerced to accept the State's offered plea, and he was pleading guilty because he was guilty and for no other reason, he cannot now claim that his plea was the product of coercion."). Moreover, based on his

24

> statements under oath, the lenient sentence he received, and the fact he was found in possession of stolen property and was unable to properly explain it, the Court finds there is no reasonable probability Defendant would have foregone his plea agreement and proceeded to trial. <u>Grosvenor</u>, 874 So. 2d at 1181-82. For these reasons, Ground Six is without merit.

Resp. Ex. G1 at 90-91, 93-94. Petitioner appealed, and the First DCA per curiam affirmed the summary denial without a written opinion. Resp. Ex. H. The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications.

The record shows that on November 13, 2009, police responded to a grand theft at Panama Pharmacy. Resp. Ex. B1. When they arrived, an employee of Delivery Specialists advised police that she had pulled her delivery truck to the back of the pharmacy and began unloading several storage bins from the truck when an unknown individual ran up and grabbed three of the bins, some of which contained controlled medication. <u>Id.</u> The individual ran back to a truck and threw the bins in the back before jumping in the passenger seat and fleeing the parking lot. <u>Id.</u> That same day, another officer was dispatched in response to a stolen vehicle. <u>Id.</u> That officer recovered one of the bins from the stolen vehicle, but the other bins containing the controlled medications were not located at that time. <u>Id.</u>

On November 30, 2009, police arrived at Petitioner's home, which he shared with his live-in girlfriend, to investigate a burglary. Resp. Ex. A1.

Petitioner agreed to a search of his room, during which police found, inter alia, 500 1mg Clonazepam pills and 100 2mg Clonazepam pills. Id. Police confirmed the Clonazepam found in Petitioner's home were the same pills taken during the November 23, 2009, theft. Id. Petitioner was arrested and when questioned by police, Petitioner advised that he bought the pills "from some guy a few weeks ago." Id. When police asked "'from whom' he began to stutter and got tongue tied. He would not provide a name or race and stated 'some dude a few weeks ago, I don't know him.'" Resp. Ex. B1. The state then charged Petitioner with grand theft in the third degree under § 812.014(2)(c), Florida Statutes, in 2009-CF-15529.[8] Resp. Ex. B2. The Information provided that Petitioner "did knowingly obtain or use or endeavor to obtain or use Clonazepam pills, the value of $300 or more but less that $20,000, the property of Delivery Specialists, with intent to either temporarily or permanently deprive Delivery Specialists of a right to the property or benefit therefrom." Id.

Petitioner then entered an open plea of guilty to the grand theft charge. Resp. Ex. E. During his colloquy, Petitioner acknowledged, under oath, that by entering his plea, he was waiving his right to have the state prove beyond a reasonable doubt that he committed the offense. Id. at 6. He advised the trial court that no one threatened, coerced, or promised him anything in exchange

---

[8] The state charged Petitioner with possession of the Clonazepam in 2009-CF-15483. Resp. Ex. A2.

for his plea, and that he was, in fact, guilty of committing the offense. Id. at 6-7. He attested that his attorney advised him of the nature of the offense and that he was satisfied with her representation. Id. at 7. The trial court then acknowledged that a factual basis existed for the plea and found that Petitioner voluntarily and freely entered his plea with full knowledge of its consequences. Id. at 8-9.

Petitioner's sworn statements at his plea hearing and the circumstantial evidence supporting his plea refute Petitioner's claims that his guilty plea was involuntary and that his attorney misadvised him about the factual basis supporting his plea and the consequences of his decision. By admitting under oath that he committed this grand theft, Petitioner waived any potential defense for which he discussed with counsel before he entered that guilty plea.[9] Thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts considering the evidence presented to the state court. See 28 U.S.C. § 2254(d). This Ground is denied.

---

[9] Petitioner's allegation that he bought the controlled medication from an unknown individual is also contradicted by the sworn statements Petitioner made in ground four of his second amended Rule 3.850 motion, in which he alleged the medication belonged to his then live-in girlfriend and he knew nothing about the medication before police arrived to search his home. Resp. Ex. G1 at 68-70, 91-92.

### D. Ground Four

Petitioner argues that his trial counsel(s) were ineffective for failing to file a motion to withdraw his guilty pleas. Doc. 1 at 14-16. According to Petitioner, before pleading guilty, he entered an agreement with the state that he would provide a statement about the true perpetrators of the crimes and enter a guilty plea to the charges in exchange for his release from custody and the state's promise that it would request a lenient sentence. Id. He claims that per the alleged agreement, Petitioner pled guilty on January 27, 2010, but was not released from custody as promised. Id. He contends that police then charged him with another crime, and "believing that the prosecutor was still willing to uphold his end of the deal," Petitioner plead guilty to the new charge. Id. Petitioner asserts that after his second plea hearing, he "was then informed that the prosecution was no longer willing to honor the deal they had entered into." Id. As such, Petitioner advised his counsel that he wanted to withdraw all his guilty pleas, but "[c]ounsel simply refused to file the motion(s)." Id. Petitioner claims that when a new attorney was assigned to his cases, Petitioner asked that attorney to withdraw his pleas, but he also refused.

Petitioner raised this claim in his second amended Rule 3.850 motion. Resp. Ex. G1 at 71-74. The trial court summarily denied the claim as follows:

> Defendant avers counsel was ineffective for failing to file a motion to withdraw his plea after the State breached their agreement. According to

28

Defendant, he and the prosecutor worked out an agreement whereby Defendant would give a statement against his co-defendant and the prosecutor would release Defendant on his own recognizance and recommend a lenient sentence. Based on this alleged agreement, Defendant entered the guilty pleas. However, Defendant was never released on his own recognizance nor did the State recommend a lenient sentence, at which point Defendant asked counsel to withdraw his plea. Counsel did not move to withdraw Defendant's pleas though.

Defendant's claim is refuted by the record as Defendant, under oath, acknowledged to the Court that no one had coerced or promised him anything in exchange for entering his open pleas. Moreover, by entering an open plea, Defendant did not have a negotiated sentence. A fact the Court informed Defendant about [] while also instructing him on the maximum penalties he faced. Defendant is estopped from postconviction relief, because the basis of his claim is that he lied under oath. Polk, 56 So. 3d at 808. Defendant is bound by his sworn statements during the plea colloquy. Kelley, 109 So. 3d 812-13. Accordingly, as the record refutes Defendant's claim, he is not entitled to relief on Ground Five.

Resp. Ex. G1 at 92-93. Petitioner appealed, and the First DCA per curiam affirmed the summary denial without a written opinion. Resp. Ex. H. The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications.

In January 2010, while being represented by then Assistant Public Defender Andrea Fourman, Petitioner entered open pleas of guilty to burglary in 2009-CF-16025, grand theft in 2009-CF-15529, and possession of a controlled

substance in 2009-CF-15483. Resp. Ex. E. During that colloquy, Petitioner acknowledged, under oath, that by entering his open pleas, he was facing a maximum sentence of five years incarceration for the possession and grand theft charges and a maximum sentence of thirty years for the burglary charge. Id. at 4. He also testified that he made no agreement with the state nor his attorney as to what his ultimate sentence would be following his open pleas. Id. at 4-5. He recognized that the trial court would conduct a sentencing hearing on a future date, during which it would allow the state and counsel to present evidence for the trial court to consider before imposing its sentence. Id. at 5. The state then advised the trial court that Petitioner also had a pending case in Nassau County, and that "the recommendation [was] going to be whatever happens in this case will be run concurrent with that case." Id. at 5. Neither the state nor Petitioner made any other representations about potential recommendations regarding Petitioner's sentences. Petitioner then testified that no one threatened, coerced, or made any promises in exchange for his pleas of guilty. Id. at 6. And he advised that he had no other questions for his attorney or the trial court before his pleas were accepted. Id. at 7-8. Based on Petitioner's sworn statements, the trial court accepted his pleas, finding he entered them freely and voluntarily with a full understanding of their nature and consequences. Id. at 9.

In March 2010, the state then charged Petitioner in 2010-CF-1910 with the grand theft of a front-end loader and the burglary of Premier Pharmacy. Resp. Ex. D2. Petitioner entered an open plea of guilty to those charges. Resp. Ex. F. During that plea colloquy, Petitioner acknowledged that by entering open pleas, he was facing a maximum sentence of thirty years incarceration as to the burglary charge and a five-year maximum as to the grand theft charge but understood there was no negotiation about what sentence he would ultimately receive. Id. at 3-4. Petitioner also recognized that the trial court could order the sentences for all offenses to which he pled guilty to run consecutive, and thus Petitioner knew he was facing a total exposure of seventy-five years in prison. Id. at 4. He stated that no one threatened him, coerced him, or made any promises in exchange for his pleas of guilty. Id. at 6. Petitioner testified that his attorney went over the plea forms with him in detail, answered all his questions, and that he was satisfied with counsel's representation. Id. at 7.

A review of Petitioner's state court dockets shows that in June 2010, another Assistant Public Defender, Jon Pierre Lorimier, began representing Petitioner. See Carter, 2009-CF-15483; 2009-CF-15529; 2009-CF-16025; 2010-CF-1910. Petitioner then entered his open plea of guilty to perjury on May 16, 2011. Resp. Ex. C5. The trial court sentenced Petitioner in all cases on May 20, 2011. Of import, Petitioner does not provide any details surrounding his perjury

conviction nor does he allege that he asked counsel to file a motion to withdraw his plea to that charge.

In any event, Petitioner's sworn statements made during the January and March 2010 plea hearings refute his allegation that the state made promises to Petitioner in exchange for his guilty pleas. Had the state made such promises, Petitioner's failure to speak up at his plea hearings estops him from now arguing a position contrary to the statements made under oath in open court. And despite facing a potential seventy-five-year term of incarceration, the trial court sentenced Petitioner to a cumulative twenty-year term.[10] Given this record, Petitioner cannot show that but for trial counsels' alleged failure to file a motion to withdraw his pleas, such motion would have been granted and Petitioner would have proceeded to trial. The Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts considering the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). This Ground is denied.

---

[10] In 2009-CF-16025, the trial court ordered Petitioner's five-year term of incarceration for his perjury conviction to run consecutive to his fifteen-year term of incarceration for his burglary conviction. Resp. Ex. C6 at 5. The court ordered all other sentences for all other cases to run concurrent.

**E. Ground Five**

Petitioner argues that his trial counsel was ineffective for advising him to enter guilty pleas in 2009-CF-16025, 2009-CF-15529, and 2010-CF-1910 without investigating any exculpatory evidence. Doc. 1 at 17. Petitioner alleges that "[d]uring pre-trial meetings [Petitioner] explained to counsel that he did not commit the burglaries he was accused of, and he had not been the person that committed the grand theft of the pills that he purchased at a later date." Id. However, according to Petitioner, counsel ignored that information and "simply convinced [Petitioner] that it was in his best interest to cooperate with the State. . . ." Id.

Petitioner raised this claim in his second amended Rule 3.850 motion. Resp. Ex. G1 at 78-79. The trial court summarily denied the claim, finding the following:

> Defendant argues counsel misadvised him and coerced him into entering the plea where counsel failed to do any investigation on her own. According to Defendant, had counsel investigated, she would have learned there was no physical or circumstantial evidence to support the charges.
>
> The record refutes Defendant's allegations that there was no physical or circumstantial evidence to support the charges, because Defendant admitted to participating in the two burglaries and admitted to being in possession of a controlled substance and stolen goods. Moreover, Defendant, under oath, told the Court he was satisfied with his counsel and that he was guilty of each of the crimes. Accordingly, Defendant cannot

> now say his counsel was ineffective for failing to investigate. <u>Smith</u>, 41 So. 3d at 1040. As the record and Defendant's statements to the Court refute his claim, Defendant is not entitled to relief on Ground Seven.

Resp. Ex. G1 at 94. Petitioner appealed, and the First DCA per curiam affirmed the summary denial without a written opinion. Resp. Ex. H. The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications.

As discussed, the record evidence provides an adequate factual basis for Petitioner's pleas and convictions. Further, Petitioner's sworn statements made during his plea colloquies show that he voluntarily entered his pleas with the full understanding of the consequences. Indeed, he testified under oath and in open court that he was entering his pleas because he was in fact guilty of committing the offenses. Thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). This Ground is denied.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.     The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED with prejudice**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[11]

**DONE AND ORDERED** in Jacksonville, Florida, this 7th day of September, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

---

[11] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

Jax-7

C:    Albert Jason Carter, #J33444
       counsel of record